Argued and submitted April 18, OAR 635-100-0125 and OAR 635-100-0136
held valid December 19, 2001

# COUNTY OF MORROW
## and Port of Morrow,
### *Petitioners,*

*v.*

# DEPARTMENT OF FISH AND WILDLIFE,
### *Respondent.*

## A109640

37 P3d 180

Karen O'Kasey argued the cause for petitioners. With her on the brief were Neal A. Hueske, Corey J. Parks, and Schwabe, Williamson & Wyatt.

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

By administrative rule, the Oregon Fish and Wildlife Commission (commission) listed the Washington ground squirrel as an endangered species and adopted survival guidelines for the species. OAR 635-100-0125; OAR 635-100-0136. The County of Morrow and the Port of Morrow (petitioners) seek judicial review, arguing that the commission failed adequately to "consult with" them and failed to conduct adequate surveys before adopting the rules. We determine the validity of the rules as a matter of law, ORS 183.400(4), and conclude that the rules are valid.

A brief examination of the statutory context at the outset will aid in understanding the facts and the arguments of the parties. Oregon law charges the commission with the responsibility of managing wildlife species that are threatened or endangered, that is, native species that are or are likely to become in danger of extinction throughout any portion of their range within the state. ORS 496.172; ORS 496.004(6), (16). Among other things, the commission is authorized to conduct investigations of possible threatened or endangered species and, "[b]y rule, * * * establish and publish, and from time to time may revise, a list of wildlife species that are threatened species or endangered species." ORS 496.172(1), (2).

Pursuant to that statutory directive, the commission has adopted administrative rules concerning the listing of threatened and endangered species. The rules relating to the listing of endangered species require the commission to make a number of determinations, including that the species is native and is in danger of extinction throughout any significant portion of its range within the State of Oregon. OAR 635-100-0105(3). In making those and related determinations, the rules also require that:

"[T]he commission shall consult with:

"(a) Affected state and federal agencies;

"(b) Affected cities and counties;

"(c) Affected federally recognized Indian tribes;

"(d) The Natural Heritage Advisory Council;

"(e) Other states having a common interest in the species; and

"(f) Interested persons who have asked to be consulted and whose names are included on the commission's mailing list for such purposes."

OAR 635-100-0105(10).

With that legal framework in mind, we turn to the pertinent facts disclosed by the rulemaking record. In January 1999, the commission received a petition to list the Washington ground squirrel as endangered. Although once sufficiently abundant to be considered an agricultural pest, the population of the squirrel more recently had "plummeted" because of extermination and loss of habitat through the conversion of agricultural land. The total number of surviving Oregon colonies of Washington ground squirrel is estimated at fewer than 200. One of the last remaining significant habitats is a tract of approximately 18,600 acres in the Boardman-Willow Creek area. The tract is part of a larger tract of state-owned land that has been leased to the Boeing Corporation and is referred to by the parties as the "South Boeing tract."

The commission voted to consider listing the squirrel as endangered. The Oregon Department of Fish and Wildlife (department) prepared a draft "Biological Status Assessment" relating to the squirrel and published it in December 1999. The department sent copies of the draft to, and solicited information from, a number of "interested and affected entities," including Morrow County.

On December 15, 1999, the department issued a Notice of Proposed Rulemaking pertaining to the listing of the Washington ground squirrel. The following day, it sent the draft assessment to various entities for technical review. It also sent notices to 70 entities, informing them of the proposed listing and the availability of the draft assessment, inviting comment, and announcing a public hearing on the listing, scheduled for January 21, 2000. Among the recipients of the notice was the Association of Oregon Counties. The department also sent copies of the draft assessment, along

with the proposed rules and related materials, to local and county governments.

On January 20, 2000, Morrow County Judge Terry K. Tallman and Morrow County Commissioner Dan Brosnan sent a letter to the commission asserting that the county had not been "formally consulted about the proposed listing," which they asserted was required by OAR 635-100-0105(10). They requested that the listing decision be delayed for 60 days for further study by the county.

The hearing went forward as scheduled. Brosnan testified, complaining generally that the county had not properly been consulted and more specifically that listing the squirrel would interfere with the planned construction of a road from Boardman to Ione. No one from the county testified as to any of the biological issues specified in the proposed rule. At the conclusion of the hearing, the commission voted to add the Washington ground squirrel to the list of endangered species, OAR 635-100-0125, and to adopt guidelines for survival of the species.

Petitioners now challenge the validity of those rules pursuant to ORS 183.400, which provides that the validity of any administrative rule may be determined upon petition to this court "in the manner provided for review of orders in contested cases." We may invalidate an administrative rule if it was adopted without substantial compliance with applicable rulemaking procedures. ORS 183.335(10)(a); ORS 183.400(4)(c).

 Petitioners first argue that the rules are invalid because, in adopting them, the commission failed to consult with the Port of Morrow. According to petitioners, the commission was obligated to "consult with" the Port because the Port is an affected city or county within the meaning of OAR 635-100-0105(10)(b). In the alternative, they argue that the obligation to consult is triggered because the Port is an "interested person" within the meaning of OAR 635-100-0105(10)(f). The commission argues that the Port is neither a city nor a county and therefore is not entitled to consultation under OAR 635-100-0105(10)(b). It further argues that OAR 635-100-0105(10)(f) applies only to interested persons "who

have asked to be consulted," and nothing in this record suggests that the Port did that.

We agree with the commission. OAR 635-100-0105(10) lists a number of entities and persons with whom the commission must consult in making the determinations required before listing a species as endangered. Ports are not among the entities or persons listed. Petitioners concede the point, but they insist that, because ports are municipal entities, they must be treated like cities and counties under OAR 635-100-0105(10)(b). Their argument, however, ignores the fact that the rule does not apply to all municipal entities, but only to cities and counties. Ports are not cities or counties. Therefore, OAR 635-100-0105(10)(b) does not apply.

Nor does OAR 635-100-0105(10)(f) apply. By its terms, it requires consultation with "[i]nterested persons who have asked to be consulted and whose names are included on the commission's mailing list for such purposes." Nothing in the record indicates that the Port asked to be consulted or that its name is included on the commission's mailing list for that purpose.

■ Petitioners next argue that, even if the commission was not required to consult with the Port, it was required to consult with Morrow County, and the notice provided to the county was not sufficient to constitute the consultation that the law requires. They argue that consultation means more than mere notification of a proposed rule and must, at the least, include "asking the advice and opinion of" affected persons. They also observe that, under regulations implementing the federal Endangered Species Act, 16 USC § 1531 *et seq.*, "consultation" means more than mere notice of a potential action. The commission responds that it did ask for the advice and opinion of Morrow County, and that is all that the rule requires.

■■ Again, we agree with the commission. Neither OAR 635-100-0105 nor any other relevant commission rule defines the phrase "consult with." In interpreting administrative rules, we are required to follow the ordinary rules of construction that apply to the interpretation of statutes, that is to say, we examine the language of the rule, giving effect to the intent of the enacting body. *OR-OSHA v. Don Whitaker*

*Logging, Inc.*, 329 Or 256, 261, 985 P2d 1272 (1999).[1] Ordinarily, the term "consult" means "to ask advice of : seek the opinion of : apply to for information or instruction" and "to take counsel : deliberate together : confer." *Webster's Third New Int'l Dictionary*, 490 (unabridged ed 1993). Under that definition, one may "consult with" another by providing information and asking for a response.

Consistently with that ordinary definition, other provisions of the commission's administrative rules require "consultation" with other state agencies by providing those agencies with information and soliciting a response. OAR 635-100-0150(1), for example, provides that,

> "[i]n consultation and cooperation with agencies other than state land owning or managing agencies, the commission shall determine whether those agencies can serve a role in the conservation of the endangered species."

The rule then provides:

> "To carry out its consultation role under this rule, the department shall provide agencies with an assessment of the conservation need of the species, as well as a list of the existing management rules, plans and other management guidelines and biological information related to the management of the listed species."

OAR 635-100-0150(2). After receiving that information, the other agencies may then "determine what role [they] shall serve" and supply the commission with a "written description" of that role. OAR 635-100-0150(3).

---

[1] When an administrative agency interprets its own administrative rule, our review is more deferential. Under *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994), when an agency interprets its own rule, we will defer to that interpretation if it is "plausible," that is, if it "cannot be shown either to be inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law." In this case, it is not entirely clear whose rule is at issue and who is interpreting it. The rule was adopted by the commission, but the department filed the certificate and order. *See* ORS 496.090 (establishing the Fish and Wildlife Commission); ORS 496.080 (establishing the Department of Fish and Wildlife under the commission). Likewise, the rule requiring the commission to consult with certain affected entities and persons is listed as having been adopted by the department. At all events, even under the less deferential standard that we have described in the text, the commission prevails. So it is not necessary for us to determine whether *Don't Waste Oregon Com.* applies.

In this case, the county received notice of the proposed rulemaking. It also received copies of the draft Biological Status Assessment and an invitation to provide comments on it either before or at the scheduled public hearing. The county asked for additional time to respond, but the commission denied that request, and petitioners do not assign error to that decision. The county then declined to provide any advice or comment on the proposed listing of the Washington ground squirrel other than to assert that it would interfere with the planned construction of a road from Boardman to Ione. We conclude that the commission's provision of information to the county and its invitation to provide comment is all that the rule requires in providing that the commission "consult with" the county.

■ Petitioners' reliance on federal rules for a more demanding consultation process is unavailing. Those federal rules set out a two-tiered consultation process among federal agencies: an "informal consultation" that includes "all discussions, correspondence, etc.," 50 CFR § 402.13, and a "formal consultation" that includes a written request to initiate consultation by the interested agency, followed by an exchange of information and a 90-day period of formalized consultation, 50 CFR § 402.14. To begin with, petitioners cite nothing to suggest that the commission's rule is patterned after, or intended to enforce, any particular provision of federal law. Moreover, petitioners fail to articulate precisely what in the federal rules they find applicable to this case, much less how the commission's actions in this case were inconsistent with those federal rules.

■ Petitioners finally argue that the information on which the commission based its decision to list the squirrel as an endangered species is inadequate. In particular, they complain that the commission did not survey the entire geographic range of the squirrel's identified habitat and focused instead on the single area, the South Boeing tract. The commission replies that such a substantive challenge to the adequacy of information on which it relied is not cognizable in a rule challenge proceeding. In the alternative, the agency argues that it simply is not required to survey the entire geographic range of the squirrel's identified habitat; rather, it is required to determine whether the species is likely to become

endangered in *any* significant portion of its range within the state.

We disagree with the commission as to the cognizability of petitioners' challenge. In *Fund for Animals v. Dept. of Fish & Wildlife*, 94 Or App 211, 765 P2d 215 (1988), *rev dismissed* 307 Or 611 (1989), the commission adopted a rule setting hunting seasons and a limit on the number of tags for hunting cougars. The petitioners challenged the rule on the ground that the commission had failed to comply with the statute requiring it to "investigat[e] * * * the supply and condition" of that species. We held that, in a challenge brought under ORS 183.400, we were required to invalidate a rule

> "when the agency's power [to adopt the rule] depends on certain prerequisites and the record affirmatively shows that the agency did not comply with those prerequisites. In such circumstances, the agency would have adopted the rule in excess of its statutory authority."

*Fund for Animals,* 94 Or App at 214.

■ We do agree, however, that OAR 635-100-0105(3) does not require the commission to survey the entire geographic range of the squirrel's habitat. That rule requires the commission to determine whether the species "[i]s in danger of extinction throughout any significant portion of its range within this state." First, the rule does not require the commission itself to conduct any particular studies, surveys, or other inquiries regarding the status of the species. Second, it requires the commission to determine only whether the species is in danger of extinction in "any" significant portion of its range.

Certainly, in the abstract, the term "any" can refer to "one" or "all." *Webster's Third New Int'l Dictionary* at 97 (defining "any" to mean "one or another," "one, some, or all," and "one or more"). In this case, however, the rule refers to "any significant portion." It is clear that "any" is not intended to refer to "all"; the word modifies "significant portion," and the phrase "all significant portion of its range" would make no sense.

Moreover, related provisions of the commission's rules make clear that, when the commission intends to refer

to every item in a category, it uses the appropriate terminology. OAR 635-100-0105(2)(a), for example, provides that the state shall list "[a]*ll* native wildlife species listed * * * on the federal list of endangered or threatened species." (Emphasis added.) In contrast, the rule goes on to provide that "[a]*ny* native wildlife species appearing on the federal list as a threatened species may be considered for inclusion on the state list as an endangered species[.]" (Emphasis added.)

In short, the text and context of the rule demonstrate that, in deciding to list a species as endangered, the commission need determine only whether the species is in danger of extinction throughout one or more—but not necessarily all—significant portions of its range within the state. Accordingly, we reject petitioners' contention that the challenged rules are invalid because the commission did not survey, study, or otherwise consider all significant portions of the Washington ground squirrel's range.

OAR 635-100-0125 and OAR 635-100-0136 held valid.